UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| E. Xiong,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Merrick B. Garland, Alejandro Mayorkas, Tae D. Johnson, Marcos Charles, and Kurt Freitag,<br><br>　　　　　Respondents.[1] | Civ. No. 20–2678 (NEB/BRT)<br><br>REPORT AND RECOMMENDATION |

Kristen A. Hathaway, Esq., and Anne E. Carlson, Esq., Mid-Minnesota Legal Aid; and John Bruning, Esq., The Advocates for Human Rights, counsel for Petitioner.

David W. Fuller, Esq., United States Attorney's Office, counsel for Federal Respondents.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on E. Xiong's Petition for Writ of Habeas Corpus. (Doc. No. 1.)

I. PROCEDURAL AND FACTUAL BACKGROUND

E. Xiong was born in Laos in 1976. (Doc. No. 1-2 at 3.) Xiong's family fled Laos in 1978 and lived in a refugee camp in Thailand until they were admitted to the United States as refugees in 1980. (*Id.* at 3, 4 n.4.) Two years later, in 1982, Xiong adjusted his status to legal permanent resident. (*Id.* at 3.)

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Merrick B. Garland is substituted for William Rosen, Alejandro Mayorkas is substituted for Chad Wolf, and Tae D. Johnson is substituted for Tony Pham.

In 2014, a "monumental tragedy . . . turned [Xiong's] life upside down." (*Id.* at 30.) Xiong and his wife were biking when they were stuck by a hit-and-run driver. (*Id.* at 4.) Xiong's wife was killed. (*Id.* at 4, 30.) Xiong's legs were shattered and he could not walk for eight months. (*Id.* at 30.) Xiong became homeless, lost touch with his family, and started using methamphetamines to cope with his feelings of depression. (*Id.* at 4, 30.) This resulted in non-violent offenses "tied to his homelessness and substance-use disorder." (*Id.*)

Xiong was convicted in January 2015 for fifth-degree possession of a controlled substance. (*See* Doc. No. 1 at 7; Doc. No. 6 ¶ 5.) This resulted in commencement of removal proceedings in January 2017. (Doc. No. 1 at 7; Doc. No. 6 ¶ 5.) In March 2017, Xiong was granted Cancellation of Removal for Certain Permanent Residents. (Doc. No. 1 at 7; Doc. No. 6 ¶ 5.)

The present removal proceedings stem from a new fifth-degree possession of a controlled substance conviction. Xiong was convicted on March 14, 2019, in Scott County District Court of violating Minn. Stat. § 152.025, subd. 2(1). (Doc. No. 1-3 at 4.) Removal proceedings were initiated on June 17, 2020, charging Xiong as removable under INA § 237(a)(2)(B)(i) for violating a controlled substance law. (*Id.* at 1, 4.)

Xiong admitted the factual allegations and conceded removability, but applied for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. No. 1-2 at 1.) After a hearing, an immigration judge ("IJ") granted Xiong asylum on September 30, 2020. (Doc. No. 1-2 at 29.) The IJ found that Xiong did not present a well-founded fear of persecution based on his Hmong ethnicity, but did present a well-

2

founded fear of future persecution based on his Christian religion and stimulant-use disorder. (*Id.* at 15–16, 21, 27–28.) The IJ also found that Xiong's criminal history was not so egregious as to warrant denying asylum. (*Id.* at 28–29.) Because the IJ granted Xiong's asylum application, she did not reach his claims for Withholding of Removal or protection under the Convention Against Torture. (*Id.* at 31.)

The Government appealed Xiong's grant of asylum on October 2, 2020. (Doc. No. 1-4.) As of Xiong's February 15, 2021 reply brief, the Board of Immigration Appeals had yet to receive any briefing or even set a briefing schedule for the Government's appeal. (Doc. No. 7 at 3.) The appeal remains pending.

Xiong now seeks federal habeas relief, challenging the length of his detention. Xiong has been in immigration detention without bond or access to a bond hearing since June 16, 2020. *See* 8 U.S.C. § 1226(c) (providing that the United States Attorney General "shall take into custody any alien who . . . is deportable by reason of having committed" crimes of moral turpitude, aggravated felonies, controlled substance-crimes, and certain firearm offenses). Xiong asserts his detention without a bond hearing violates his due process rights.

## II. ANALYSIS

The primary habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon federal courts to hear constitutional challenges to the lawfulness of immigration-related detentions. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

### A. Length of Detention

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 206 (1993). Mandatory detention under Section 1226(c) does not violate a criminal noncitizen's due process rights during the "brief period necessary" for removal proceedings. *Demore v. Kim*, 538 U.S. 510, 513 (2003). "But a detainee's due process rights are implicated when the period of detention under Section 1226(c) is no longer 'brief.'" *Bolus A.D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959, 961 (D. Minn. 2019) (citing *Zadvydas*, 533 U.S. at 682); *Abdirizak Mohamed A. v. Brott*, No. 18-CV-3063 (ECT/HB), 2020 WL 1062913, at *3 (D. Minn. Mar. 5, 2020) (noting that *Demore*'s holding that mandatory detention under § 1226(c) is facially constitutional cannot be separated from its "repeated, obvious references to the 'brief' and 'very limited' duration of most § 1226(c) detentions").

Courts in this District "resolve due process challenges to Section 1226(c) detention by closely examining the facts of the particular case to determine whether the detention is reasonable using the *Muse* multi-factor test." *Omar M. v. Garland*, No. 20-CV-1784, slip op. at 6 (NEB/BRT) (D. Minn. Mar. 29, 2021) (citing *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018)); *Abdirizak*, 2020 WL 1062913, at *3 (collecting cases). Under *Muse*, courts look to:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

409 F. Supp. 3d at 715.

As with previous habeas challenges to immigration detention, Respondents assert the *Muse* test is inappropriate. (Doc. No. 5 at 16–17.) But courts in this District have repeatedly rejected this argument. *Abdirizak*, 2020 WL 1062913, at *3 ("Finally, there is an obvious intra-district trend to apply factors identical to those applied in the Report and Recommendation and *Muse* to evaluate a due-process challenge to a § 1226(c) detention. There is no good reason to buck this trend."). Indeed, Respondents continue to rely on out-of-District cases addressed in *Muse* and its progeny. 409 F. Supp. 3d at 716 (distinguishing *Dryden v. Green*, 321 F. Supp. 3d 496, 502–03 (D.N.J. 2018)); *see Abshir H.A. v. Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719467, at *4–*5 (D. Minn. June 28, 2019), *R&R adopted by* 2019 WL 3719414 (D. Minn. Aug. 7, 2019). *Abshir* conducted an in-depth analysis of Respondents' argument, ultimately concluding that the gulf between *Muse* and Respondents' Third Circuit case references ultimately land "at the same inquiry: at what point does continued detention under § 1226(c) become unreasonable?" *Abshir*, 2019 WL 3719467, at *5, *R&R adopted by* 2019 WL 3719414. Accordingly, this Court will not deviate from the well-established *Muse* factors widely employed in this District.

The first factor, length of detention to date, favors Xiong. He has been in detention since June 16, 2020, approximately 11 months. This is beyond the "brief period" contemplated by *Demore*. 538 U.S. at 530 ("In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."). Instead, Xiong has spent nearly *double* the amount of time in immigration

custody as the Respondent in *Demore*. *Id.* ("Respondent was detained for somewhat longer than the average—spending six months in INS custody prior to the District Court's order granting habeas relief, but respondent himself had requested a continuance of his removal hearing."); *Muse*, 409 F. Supp. 3d at 716 (finding the first factor weighed in Muse's favor where he spent 14 months in custody). Xiong has had no opportunity for an individualized determination as to his dangerousness or flight risk during these 11 months.

Second, courts consider how long the detention is likely to continue absent judicial relief. *Muse*, 409 F. Supp. 3d at 716. "In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals." *Id.* at 716–17. This factor weighs in Xiong's favor. The Government's appeal has been pending at the BIA since October 2, 2020, and, as of February 15, 2021, the BIA had failed to even set a briefing schedule to resolve the appeal. If the BIA were to reverse the grants of asylum, the IJ would then need to make findings as to Xiong's claims for Withholding of Removal and protection under the Convention Against Torture. Even ignoring the possibility of appeal to the Eighth Circuit, there is no timetable for completion in sight.

Under the third factor, courts look at the conditions of detention. "Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration. The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717. Here, Xiong is being held at Freeborn County Jail alongside criminal defendants. ICE is

detaining Xiong "under conditions that are indistinguishable from penal confinement." *Id.* This factor weighs in Xiong's favor.

Fourth, courts consider delays in the immigration proceedings caused by the noncitizen. Xiong admitted to the factual allegations and conceded removability pursuant to the charges. He presented a claim for asylum, Withholding of Removal, and protection under the Convention Against Torture, which the IJ found meritorious. Xiong has not prolonged his immigration proceedings, nor has he engaged in any dilatory tactics through the immigration proceedings. As such, this factor weighs in his favor.

For the fifth factor, courts look at the delays caused by the government. This Court does not find any dilatory activity in this case. Like Xiong, DHS has complied with applicable deadlines and advanced the immigration proceedings. This factor weighs in Respondents' favor.

Finally, the sixth factor requires the court to consider the likelihood that the proceedings will culminate in a final removal order. "Courts in this District are disinclined to conduct an in-depth analysis of this factor, as doing so would require the Court to weigh the merits of IJ decisions and the parties' appeals which it does not have a sufficient basis to do." *Abshir*, 2019 WL 3719414 at *2. The Court does not find this factor weighs in either party's favor. The IJ granted Xiong asylum on two independent grounds. As noted, if the BIA were to reverse both grants of asylum, the IJ would then need to make findings as to Xiong's claims for Withholding of Removal and protection under the Convention Against Torture. While the appellate review process will owe

deference to the factual and credibility findings of the IJ, the Court cannot predict what the BIA will do nor how any future proceedings will transpire.

In sum, like in *Muse*, four factors weigh in Xiong's favor, one weighs towards Respondents, and one is neutral. Continued detention of Xiong under these circumstances without affording him a bond hearing would violate his rights under the Due Process Clause. The IJ should be ordered to promptly conduct a bond hearing.

### B. The Bond Hearing

The parties dispute how that bond hearing should proceed. As concluded in *Omar M.*, "due process requires a burden of proof . . . on the government by clear and convincing evidence . . ." *Omar M.*, No. 20-CV-1784, slip op. at 10 (NEB/BRT). As Judge Brasel noted, "[c]ourts in this district have generally declined to decide the burden-of-proof issue, concluding that the IJ 'should have the first opportunity to address' the issue of the burden of proof." *Id.* at 11. But this resulted in an "exercise in futility" despite the significant guidance those opinions provided. The IJs failed to address the issue but instead continued placing the burden of proof on detainees because the BIA told them to do so. *Id.* at 15–16. Thus, at a bond hearing held following a constitutional challenge to the length of immigration detention, the government bears the burden of proving the detainee presents a danger to the community or a flight risk by clear and convincing evidence. *Id.* at 19; *Santos v. Warden Pike Cty. Corr. Fac.*, 965 F.3d 203, 213 (3d Cir. 2020). In this Court's view, that standard must be applied in Xiong's bond hearing.

## RECOMMENDATION

Based upon all the files, record, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner E. Xiong's Petition for Writ of Habeas Corpus (**Doc. No. 1**) be **GRANTED** as follows: The immigration judge must provide E. Xiong a bond hearing within **30 days**. At this bond hearing, the immigration judge must make an individualized determination whether detention is necessary to protect the community or prevent E. Xiong from fleeing. The government bears the burden of proving E. Xiong presents a danger to the community or a flight risk by clear and convincing evidence.

Dated: May 12, 2021                                  *s/ Becky R. Thorson*
                                                     BECKY R. THORSON
                                                     United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).